IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Janice Gilchrist, | ) | C/A No.: 1:14-2196-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

## I. Relevant Background

### A. Procedural History

On October 19, 2010, Plaintiff filed an application for DIB in which she alleged her disability began on July 18, 2009.[1] Tr. at 72, 139–43. Her application was denied initially and upon reconsideration. Tr. at 78–81, 83–84. On October 4, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Tracy Daly. Tr. at 26–61 (Hr'g Tr.). The ALJ issued an unfavorable decision on December 4, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 5–25. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on June 5, 2014. [ECF No. 1].

### B. Plaintiff's Background and Medical History

#### 1. Background

Plaintiff was 52 years old at the time of the hearing. Tr. at 28. She completed the ninth grade. Tr. at 53. Her past relevant work ("PRW") was as a yarn inspector and a twister attendant. Tr. at 35–36, 38. She alleges she has been unable to work since June 18, 2010. Tr. at 31.

---

[1] Plaintiff subsequently filed a motion to amend her alleged onset date to June 18, 2010, which the ALJ granted during the hearing. Tr. at 31.

2.      Medical History

Plaintiff was diagnosed with Graves' disease and had thyroid surgery in 1999. Tr. at 634. She was diagnosed with left breast cancer in 2001 and was treated with chemotherapy and radiation. Tr. at 225, 518. A bone scan on August 26, 2002, revealed Plaintiff to have mild arthritic activity. Tr. at 546. An MRI of Plaintiff's cervical spine on May 6, 2005, indicated Plaintiff had an annular tear with central disc protrusion at C4-5, which did not result in significant spinal or foraminal stenosis. Tr. at 537. On May 30, 2005, Plaintiff underwent MRI of her left upper extremity after complaining of left neck and arm pain, but the MRI was unremarkable. Tr. at 536. Plaintiff complained of tingling and pain in her bilateral arms, numbness in her left axilla, and tingling paresthesias in her feet. Tr. at 540. Nerve conduction studies ("NCS") and electromyography ("EMG") performed on June 2, 2005, showed Plaintiff to have C7 radiculopathy on the left, mild to moderate bilateral carpal tunnel syndrome, and possible mild chemotherapy-induced polyneuropathy. Tr. at 540–41. Plaintiff endorsed back pain, but an MRI of her lumbar spine on June 12, 2008, indicated only mild degenerative changes. Tr. at 524. In February 2009, Russell D. Hall, M.D. ("Dr. Hall"), diagnosed Plaintiff with major depression without suicidal or homicidal ideation and prescribed Lexapro. Tr. at 649.

On April 16, 2010, Plaintiff presented to John C. Whitley, III, Ph. D. ("Dr. Whitley"), for a psychological consultative examination. Tr. at 626–29. She complained of racing thoughts, worry, difficulty sleeping, fatigue and tiredness, low energy, little motivation, and mild-to-moderate depression. Tr. at 627. She reported being able to follow directions, organize her schedule, bathe and dress herself, cook, drive locally,

3

make a shopping list, wash and fold clothes, wash dishes, make a bed, and manage her finances with a money order. *Id.* Dr. Whitley observed Plaintiff to be mildly lethargic and to speak at a slow rate and soft tone. Tr. at 628. He indicated Plaintiff had adequate grammar and language skills; clear, coherent, and adequate thought processing; was properly oriented; and had adequate proverb interpretation and abstract reasoning skills. *Id.* He stated Plaintiff was able to subtract and to perform serial threes and fives in a forward manner, but could not recite serial sevens. *Id.* He found Plaintiff was likely functioning in at least the borderline range of ability. *Id.* Dr. Whitley diagnosed depressive disorder secondary to medical issues and anxiety disorder, not otherwise specified ("NOS"). *Id.* He indicated Plaintiff was capable of communicating with others appropriately in a work setting, following simple work tasks without difficulty, and making basic and daily decisions. Tr. at 629. He also stated Plaintiff may function best at work tasks that required minimal physical activity. *Id.*

An x-ray of Plaintiff's lumbar spine on April 27, 2010, was normal. Tr. at 737.

On April 29, 2010, Plaintiff visited Melissa Richardson, M.D. ("Dr. Richardson"), for a physical examination. Tr. at 633. She complained of pain in her hands, feet, low back, neck, hips, legs, and knees. *Id.* Dr. Richardson noted the following abnormalities: cervical flexion reduced from 50 to 20 degrees; cervical extension reduced from 60 to 30 degrees; lumbar flexion reduced from 90 to 50 degrees; lumbar extension reduced from 25 to 10 degrees; left shoulder abduction reduced from 150 to 115 degrees; bilateral shoulder forward elevation reduced from 150 degrees to 130 degrees; knee flexion reduced from 150 degrees to 95 degrees on the left and 120 degrees on the right; mild left

knee effusion; and a one centimeter difference in right and left calf circumference. Tr. at 631–32. Plaintiff had normal hand function, negative straight-leg raising test, and a normal gait. Tr. at 634–35. She was able to tandem and heel-toe walk and perform a modified squat without an assistive device. Tr. at 635. Plaintiff had slight atrophy in her left calf, and her left leg strength was 4/5. *Id.*

On November 9, 2010, Plaintiff presented to Ellen Rhodes, RN, FNP ("Ms. Rhodes"), with complaints of abdominal discomfort, achiness in her joints, decreased appetite, and a possible aneurysm. Tr. at 643. Ms. Rhodes observed Plaintiff to have some generalized abdominal tenderness to palpation and crepitus with movement of her knees and wrist. *Id.* She referred Plaintiff for a CT scan of her abdomen and pelvis and blood work. *Id.*

CTs of Plaintiff's abdomen and pelvis on November 12, 2010, indicated hepatic steatosis and a small calcified aneurysm of the peripheral right renal artery. Tr. at 718.

On December 13, 2010, Dr. Hall indicated Plaintiff had mild depression that was effectively treated with medication. Tr. at 654. He indicated Plaintiff had no work-related limitation in function due to depression. *Id.*

Plaintiff visited Harriet R. Steinert, M.D. ("Dr. Steinert"), for a consultative examination on February 9, 2011. Tr. at 654–55. Dr. Steinert indicated Plaintiff was pleasant and cooperative, but had a flat affect. Tr. at 655. She observed Plaintiff to get on and off the exam table without difficulty. *Id.* Plaintiff had full range of motion ("ROM") of her cervical spine and no tenderness to palpation in her neck. *Id.* She demonstrated full ROM of joints in all four extremities. *Id.* Dr. Steinert observed Plaintiff to have no

5

tenderness to palpation, swelling, inflammation, or deformity in any joints. *Id.* Plaintiff had normal sensation and motor function. *Id.* Dr. Steinert found Plaintiff to demonstrate no motor atrophy. *Id.* Plaintiff had normal and equal grip strength and normal fine and gross motor skills. *Id.* Dr. Steinert specifically observed "[s]he has no difficulty carrying multiple bags and items in her hands and getting her medication bottles out of a bag." *Id.* A straight-leg raising test was negative, and Dr. Steinert found Plaintiff to have no tenderness to palpation in her lumbar spine. *Id.* Plaintiff was able to walk without an assistive device and with a normal gait. *Id.* She could not walk on her toes, but could walk on her heels. *Id.* Dr. Steinert indicated Plaintiff had "pain in her lumbar spine all the time" and "gets short of breath with exertion." *Id.* She provided diagnoses of Graves' disease, status post breast cancer, hypertension, bilateral carpal tunnel syndrome, degenerative disc disease, COPD, and arthritis. *Id.*

State agency consultant Craig Horn, Ph. D. ("Dr. Horn"), completed a psychiatric review technique ("PRT") on February 9, 2011. Tr. at 661. He considered Listing 12.04 for affective disorders, but found Plaintiff's mental impairments to be non-severe. *Id.*

Plaintiff followed up with Ms. Rhodes on April 8, 2011, complaining of achy joints, no energy, and sinus problems. Tr. at 678. Ms. Rhodes treated Plaintiff for an upper respiratory infection and referred her to the hospital for blood work. *Id.*

Plaintiff presented to Joanna Sadurski, M.D. ("Dr. Sadurski"), for breast cancer follow up on May 26, 2011. Tr. at 702–05. She reported a one-week history of shortness of breath with exertion and pain in her left pelvis. Tr. at 702. Dr. Sadurski observed Plaintiff to have appropriate mood and affect; no tenderness or swelling; normal ROM

without obvious weakness; no sensory or motor deficits; normal cerebellar function; normal gait; and intact cranial nerves. Tr. at 703. She referred Plaintiff for a chest x-ray and a pelvic ultrasound. Tr. at 705.

Plaintiff presented to Lisa D. Jennings, M.D. ("Dr. Jennings"), on December 23, 2011, complaining of facial pain, headache, moderate congestion, feeling hot and cold, decreased energy, and joint pain. Tr. at 765. Dr. Jennings diagnosed sinusitis, diffuse joint pains (arthralgias), hypertension, hypothyroidism, and fatigue. Tr. at 766.

On March 20, 2012, Plaintiff presented to Poole Family Eye Care with a complaint of floaters. Tr. at 754. She was diagnosed with presbyopia and floaters. *Id.*

Plaintiff followed up with Dr. Jennings on March 27, 2012. Tr. at 767–68. She complained of pain in her lower back, knees, and upper shoulders and endorsed morning stiffness, moderate fatigue, and mood changes. Tr. at 767. Dr. Jennings observed Plaintiff to have tenderness in her lower spine and lateral knees and decreased ROM of her back secondary to pain. Tr. at 768. She found Plaintiff's symptoms to be "highly suggestive of Fibromyalgia." *Id.* She referred Plaintiff for testing to rule out metabolic causes for her symptoms and indicated she would have her follow up in three weeks to discuss further treatment options. *Id.* Plaintiff's thyroid stimulating hormone ("TSH") level was low, and Dr. Jennings increased her Synthroid dosage. Tr. at 784.

Plaintiff followed up with Dr. Jennings on September 21, 2012, regarding hypertension and hypothyroidism. Tr. at 771–73. She complained of sinus-related symptoms and bilateral heel pain. Tr. at 771. Dr. Jennings indicated Plaintiff had a working diagnosis of fibromyalgia. *Id.* She assessed hypertension with good control,

hypothyroidism, allergic rhinitis, plantar fasciitis, and diffuse joint pains (arthralgias). Tr. at 773. Dr. Jennings noted Plaintiff was scheduled for a functional capacity evaluation the following week. Tr. at 771.

On September 28, 2012, Plaintiff's TSH level was markedly elevated. Tr. at 781. Dr. Jennings indicated she would adjust Plaintiff's thyroid medication. *Id.*

On October 2, 2012, Dr. Jennings provided a medical source statement regarding Plaintiff's ability to do work-related activities. Tr. at 757–62. She indicated Plaintiff could occasionally lift and carry up to 10 pounds and could never lift and carry over 10 pounds. Tr. at 757. She assessed Plaintiff as being able to sit for three hours at a time and for a total of three hours in an eight-hour workday; stand for three hours at a time and for a total of three hours in an eight-hour workday; and walk for three hours at a time and for a total of three hours in an eight-hour workday. Tr. at 758. She indicated Plaintiff did not require a cane to ambulate. *Id.* Dr. Jennings found Plaintiff could occasionally reach, handle, finger, feel, and push/pull with her bilateral hands. Tr. at 759. She indicated Plaintiff could occasionally use her bilateral feet to operate foot controls. *Id.* She found Plaintiff could continuously balance; occasionally climb stairs and ramps, stoop, and kneel; and never climb ladders or scaffolds, crouch, or crawl. Tr. at 760. She indicated Plaintiff was not limited in her abilities to see and hear. *Id.* Dr. Jennings found Plaintiff could occasionally tolerate unprotected heights, moving machinery, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. Tr. at 761. She indicated Plaintiff could continuously operate a motor vehicle and tolerate wetness and humidity. *Id.* She found Plaintiff could be exposed to moderate noise, similar to that in an office

8

setting. *Id.* Finally, Dr. Jennings indicated Plaintiff could perform the following activities: shopping; traveling without a companion for assistance; ambulating without using a wheelchair, walker, two canes, or two crutches; walking a block at a reasonable pace on rough or uneven surfaces; using standard public transportation; climbing a few steps at a reasonable pace with the use of a single hand rail; preparing a simple meal and feeding herself; caring for her personal hygiene; and sorting, handling, and using paper and files. Tr. at 762.

        C.      The Administrative Proceedings

              1.      The Administrative Hearing

                    a.      Plaintiff's Testimony

At the hearing on October 4, 2012, Plaintiff testified she last worked as a yarn inspector. Tr. at 35–36. She stated she previously worked as a twister attendant in a mill from 1984 to 2007. Tr. at 38. Plaintiff indicated she had not worked since June 19, 2010. Tr. at 39. She stated she was laid off from her job and attempted to find work initially. *Id.* However, she subsequently realized she was unable to work because she found it difficult to perform her last job and was often visiting her doctors. *Id.* Plaintiff indicated carpal tunnel syndrome in her arms and a bulging disc in her back presented problems in picking up the yarn, standing in one spot, turning, and placing the yarn in the box. *Id.* Plaintiff stated she was unable to work because of arthritis in her knees and legs, bulging discs and nerve pain in her back, pain in her arm, and difficulty sleeping caused by Graves' disease. *Id.*

Plaintiff testified carpal tunnel syndrome caused her hands to freeze up and to lose feeling, which resulted in her dropping items. Tr. at 40. She stated she experienced problems with her hands two to three times per day when trying to pick up items. *Id.* She testified she could lift a five-pound bag of sugar. Tr. at 40–41. She indicated her fingers froze and cramped when she attempted to write. Tr. at 41. She stated she had difficulty wringing out a washcloth while taking a bath. *Id.*

Plaintiff testified her back pain was an eight on a 10-point scale during a typical day. Tr. at 42. She stated she had pain in her lower back and the back of her neck. *Id.* She indicated she did not take pain medication because her doctor only prescribed ibuprofen and administered cortisone shots. *Id.* She stated she received cortisone shots when her pain was at its worst, but indicated they wore off after a day or two. *Id.*

Plaintiff testified she experienced pain in her knees, ankles, arms, and feet, but indicated her left knee and hip joints were the most painful. Tr. at 43. She stated she used a cane for balance and to reduce the pain in her knees and back and indicated she used it most of the time. *Id.* She denied having been prescribed the cane, but stated her doctor told her to use it if she needed it. Tr. at 44.

Plaintiff testified Graves' disease caused her to experience hot flashes, sleep disturbance, and difficulty thinking. Tr. at 49. She endorsed side effects from her medications that included nervousness and confusion. *Id.* She stated she was diagnosed with breast cancer in the past and received chemotherapy and radiation. Tr. at 51. She indicated she continued to have difficulty breathing and problems with long-term memory. *Id.* She testified she experienced depression and sometimes felt suicidal. Tr. at

52. She stated she had visited the Beckman Center for mental health treatment, but did not feel that the treatment she received resulted in any improvement in her symptoms. *Id.* She indicated she had a weak kidney and needed to use the bathroom frequently. Tr. at 59–60.

Plaintiff indicated she could walk 50 feet at a time with her cane and would require a five-minute break before walking another 50 feet. *Id.* She stated she had difficulty getting up and experienced a stabbing sensation in her mid-back if she sat for too long. Tr. at 45. She estimated she could sit for 30 to 40 minutes at a time. *Id.* She testified she spent most of her day lying down. *Id.*

Plaintiff described her typical day to include waking up and taking approximately 15 pills, drinking two cups of coffee, and lying back down. Tr. at 46. She testified she got up again between 11:00 a.m. and 12:00 p.m., ate a sandwich, and watched Gospel television until her pain increased or she became dysfunctional because of her medications. *Id.* She indicated she spent the rest of the day alternating between lying down and getting up for short periods. *Id.*

Plaintiff testified she prepared small meals, bathed herself, put her dirty clothes in the washer, and washed a few dishes at a time. Tr. at 46. She denied vacuuming and sweeping. Tr. at 47. She stated she sometimes visited the grocery store with her son. *Id.* She indicated she went out about once a week and visited her doctor, church, Bible study, and the store. Tr. at 48. She testified she attended church every other Sunday, but had difficulty sitting through the services and often had to leave church early. *Id.* She stated

11

she attended Bible study for one hour twice a month. Tr. at 54. She indicated she drove

once or twice a week to visit her father, who lived a mile away. Tr. at 50.

b.    Vocational Expert Testimony

Vocational Expert ("VE") G. Mark Leaptrot reviewed the record and testified at

the hearing. Tr. at 55–59. The ALJ described a hypothetical individual of Plaintiff's

vocational profile who could perform work at the medium exertional level with the

following limitations: occasionally climb ramps and stairs; frequently balance, stoop,

kneel, and crouch; never climb ladders, ropes, or scaffolds; never crawl; must avoid even

moderate exposure to irritants such as chemicals, fumes, odors, dust, gases, and poorly

ventilated areas; must avoid all exposure to hazardous machinery and unprotected

heights; must work in a low-stress job with no fixed or rigid production quotas, no

hazardous conditions, only occasional decision making, and only occasional changes in

the work setting. Tr. at 56. The VE testified that the hypothetical individual would be

unable to perform Plaintiff's PRW. Tr. at 57. The ALJ asked whether there were any

other jobs in the regional or national economy that the hypothetical person could perform.

*Id.* The VE stated medium jobs that satisfied the other limitations in the hypothetical did

not exist in significant numbers. *Id.*

For a second hypothetical question, the ALJ changed the exertional level to light,

but kept all the other limitations set forth in the first hypothetical question. *Id.* The VE

identified light and unskilled jobs with a specific vocational preparation ("SVP") of two

as an information clerk, *Dictionary of Occupational Titles* ("*DOT*") number 237.367-018,

with 2,900 positions in South Carolina and 500,000 positions in the national economy; a

12

routing clerk, *DOT* number 222.687-022, with 2,500 positions in South Carolina and at least 660,000 positions in the national economy; and an office helper, *DOT* number 239.567-010, with 1,500 positions in South Carolina and at least 185,000 positions in the national economy. *Id.*

For a third hypothetical question, the ALJ asked the VE to assume the individual was limited to sedentary work, but had the same postural, environmental, and mental limitations specified in the prior hypothetical questions. Tr. at 58. He asked the VE to further assume the individual would be unable to sustain sufficient concentration, persistence, or pace to perform even simple or routine tasks on a regular basis for eight hours per day, five days per week, or over the course of a 40-hour workweek. *Id.* He asked if the individual could perform any jobs. *Id.* The VE indicated the individual could not engage in gainful employment because it required a minimum eight-hour workday and 40-hour workweek. *Id.*

The ALJ asked the VE to take the restrictions in the second hypothetical question and to add the ability to alternate between sitting and standing as needed throughout the workday without being off task. Tr. at 58–59. He asked if the additional restriction would change the VE's response to the second hypothetical question. Tr. at 59. The VE indicated it would not. *Id.*

2.    The ALJ's Findings

In his decision dated December 4, 2012, the ALJ made the following findings of fact and conclusions of law:

13

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.      The claimant has not engaged in substantial gainful activity since June 18, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: arthritis (20 CFR 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with additional limitations. In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk for approximately 6 hours of an 8-hour work day and sit for approximately 6 hours of an 8-hour workday with normal breaks. The claimant is able to frequently balance, stoop, kneel, crouch, and crawl. The claimant is able to occasionally climb ramps or stairs but she is unable to crawl. The claimant must be able to alternate sitting or standing positions throughout the day without leaving the workstation. The claimant must avoid moderate exposure to irritants and chemicals, and avoid all exposure to hazards, machinery, and unprotected heights. The claimant is limited to work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, and requires only occasional decision making and changes in the work setting.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on June 18, 1960 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

       11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2010, through the date of this decision (20 CFR 404.1520(g)).

Tr. at 10–20.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

    1.    the ALJ did not properly consider the evidence of record and the medical opinions in assessing Plaintiff's RFC; and

    2.    new evidence requires remand.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

    1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability

15

claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

(1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

      B.      Analysis

            1.      RFC Assessment

Plaintiff argues the ALJ erroneously found she had the RFC to perform light work. [ECF No. 23 at 3–7]. She maintains the medical opinions and evidence in the record supported a finding that she was limited to sedentary work. *Id.* at 4–5.

The Commissioner argues substantial evidence supports the ALJ's RFC assessment. [ECF No. 24 at 6]. She maintains the ALJ properly evaluated the record and tailored the RFC to account for all of Plaintiff's credibly-established functional limitations. *Id.* at 9. She contends Plaintiff failed to identify any specific functional limitations that precluded performance of the jobs identified by the vocational expert. *Id.*

RFC is an assessment of the claimant's ability to perform sustained work-related activities eight hours per day, five days per week. SSR 96-8p. To determine a claimant's RFC, an ALJ must identify the limitations imposed by the claimant's impairments and assess the claimant's work-related abilities on a function-by-function basis. *Id.* The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." *Id.* The ALJ is required to consider all relevant evidence in the case record, including the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to the medically-determinable impairment, evidence from attempts to work, need for structured living environment, and work evaluations. *Id.*

When the evidence includes a medical opinion from a treating physician, the Social Security Administration's ("SSA's") regulations and rulings accord deference to that opinion. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p. A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. *Id.* However, even if an ALJ determines a treating physician's opinion is not entitled to controlling weight, the treating physician's opinion may still support a finding that the claimant is disabled and the ALJ is required to consider the opinion, along with all other medical opinions in the record, based on the factors in 20 C.F.R. § 404.1527(c). SSR 96-2p. The factors to be considered include the

following: the examining relationship between the claimant and the medical provider; the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and the frequency of examination and the nature and extent of the treatment relationship; the support for the medical provider's opinion in her treatment records; the consistency of the medical provider's opinion with the record as a whole; the specialization of the medical provider; and any other factors that are relevant to the particular claim. 20 C.F.R. § 404.1527(c); *see also Johnson*, 434 F.3d at 654. In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must specify the weight accorded to the treating source's opinion, cite reasons for the weight accorded, and support his decision with evidence in the case record. SSR 96-2p.

The ALJ found Plaintiff had the RFC to perform light work and was limited to carrying 20 pounds occasionally and 10 pounds frequently, standing or walking for six hours out of an eight-hour workday, and sitting for six hours out of an eight-hour workday. Tr. at 13. He found "the findings reported by the consultative examiners and the objective medical evidence support the conclusion that the claimant is able to perform a range of light work as described in the above stated residual functional capacity." Tr. at 18.

Plaintiff points to four specific pieces of evidence that she believes the ALJ did not properly consider in determining her RFC: Dr. Richardson's findings, Dr. Whitley's statement, Dr. Steinert's indications, and Dr. Jennings' opinion. [ECF No. 23 at 4–5]. The ALJ summarized Dr. Richardson's findings in the decision. Tr. at 14. He discussed Dr.

20

Whitley's opinion and gave it great weight, but did not discuss that portion of his opinion in which he referenced Plaintiff's physical abilities. Tr. at 16–17. He summarized Dr. Steinert's general findings, but did not note that she indicated Plaintiff had pain in her lumbar spine "all the time" and experienced shortness of breath upon exertion. Tr. at 15. He considered Dr. Jennings' opinion that Plaintiff was limited to lifting 10 pounds occasionally and sitting, standing, and walking for three hours each during an eight-hour workday, but gave it little weight because Dr. Jennings did not indicate the objective findings she relied upon and no test findings or physical examinations supported the limitations she described. Tr. at 17.

The undersigned recommends a finding that the ALJ did not meet his burden to explain his conclusions regarding Dr. Jennings' medical opinion and his assessment of an RFC to perform light work. As Plaintiff's treating physician, Dr. Jennings' opinion was entitled to deference. 20 C.F.R. § 404.1527(c). The ALJ acknowledged that Dr. Jennings was an examining and treating physician, in accordance with 20 C.F.R. § 404.1527(c)(1),(2), but he concluded those factors were outweighed by the weakness of the supportability and consistency factors under 20 C.F.R. § 404.1527(c)(3),(4). Tr. at 17. The ALJ summarily explained that his decision to accord little weight to Dr. Jennings' opinion was supported by a lack of evidence to corroborate her opinion in her records or the record as a whole, but he neglected to explain why neither Dr. Jennings' treatment records nor the record as a whole supported the assessed limitations. *See id.* Pursuant to 20 C.F.R. § 404.1527(c)(2), the ALJ is always required to "give good reasons" in the decision for the weight accorded to the treating source's opinion. To the extent that the

ALJ failed to explain his conclusions that the supportability and consistency factors mitigating against giving more than little weight to Dr. Jennings' opinion, the undersigned finds that he did not comply with the requirements of 20 C.F.R. § 404.1527(c)(2) and SSR 96-2p.

Furthermore, the ALJ failed to reconcile the RFC he assessed for light work with evidence in the record that arguably supported the RFC Dr. Jennings assessed for sedentary work. First, a physical examination and testing performed by Dr. Richardson showed Plaintiff to have limited ROM throughout her spine and extremities. *See* Tr. at 631–32, 634. Although the ALJ found an RFC for light work to be consistent with the findings of the consultative examiners, he did not explain how Dr. Richardson's findings were more consistent with an RFC for light than sedentary work. Next, the ALJ neglected to consider Dr. Jennings' observations in her records that indicated Plaintiff to have tenderness in her spine, reduced ROM, and a possible diagnosis of fibromyalgia. Tr. at 768, 771. Then, the ALJ failed to consider that the functional capacity evaluation might have informed the restrictions Dr. Jennings assessed.[4] Finally, the ALJ failed to address

---

[4] Plaintiff attached to her brief a physical work performance evaluation conducted on September 25, 2012, that indicated she was limited to sedentary work. *See* ECF No. 23-1. This evaluation was not included in the record before the ALJ. While the undersigned does not expect the ALJ to have clairvoyantly discerned the contents of the evaluation, the undersigned recognizes the ALJ was notified of the potential existence of such an evaluation in that Dr. Jennings noted on September 21, 2012, during the visit immediately preceding her completion of the medical source statement, that Plaintiff was scheduled to undergo a functional capacity evaluation the following week. *See* Tr. at 771.

indications in the consultative examination notes from Drs. Whitley and Steinert that Plaintiff's exertional abilities were further limited.[5]

"The ALJ had the duty to find facts and consider the import of conflicting evidence." *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012), citing *Doss v. Dir., Office of Workers' Comp. Programs*, 52 F.3d 654, 658 (4th Cir. 1995). While other evidence of record arguably supported the RFC assessed by the ALJ, he failed to reconcile the evidence that supported his conclusion with the evidence that did not. In light of the foregoing, the undersigned recommends the court find the ALJ did not consider all relevant evidence in accordance with SSR 96-8p in determining Plaintiff had an RFC for light work.

2.     New Evidence Submitted to Court

Plaintiff submitted with her brief a physical work capacity evaluation dated September 25, 2012, that concluded her overall level of work fell within the sedentary range. [ECF No. 23-1 at 1]. It indicated Plaintiff could exert up to 10 pounds of force occasionally and a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects and was capable of sitting most of the time, but may walk or stand for brief periods of time. *Id.* The report indicated Plaintiff could tolerate the sedentary work level for an eight-hour day and 40-hour week. *Id.* The evaluation noted

---

[5] The undersigned is not suggesting the objective findings of Drs. Whitley and Steinert were consistent with an RFC for sedentary work, but merely noting both consultative examiners observed her to be further limited by her pain and the ALJ's failure to address these observations.

Plaintiff engaged in self-limited behavior on 13% of the 16 tasks, which was deemed to be within normal limits. *Id.*

Plaintiff argues this evidence is new and material and that good cause supports her failure to submit the evidence at the administrative level. [ECF No. 23 at 5–6]; *see also* ECF No. 23-1. The Commissioner maintains the court cannot consider the evidence Plaintiff presented to the court, because the evidence is not new and because Plaintiff did not demonstrate good cause for her failure to submit the evidence at the administrative level. [ECF No. 24 at 10–11].

Because the undersigned has recommended the case be remanded for reconsideration of Plaintiff's RFC, the ALJ should also consider the physical work capacity evaluation dated September 25, 2012, on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

August 5, 2015                                   Shiva V. Hodges
Columbia, South Carolina                 United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).